FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 6 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
Delta Division

**RANDY WASHINGTON;**
**LINDA PRICE; DAVISHA SILAS;**
**DAVID MARTINEZ and SEQUORIA GRADY,**     **PLAINTIFFS**
*Each individually and on behalf of*
*all others similarly situated*

v.                  Case No. 2:22- CV-101- KGB

**FAMILY DOLLAR STORES, INC.;**           This case assigned to District Judge Baker
**DOLLAR TREE, INC.;**                    and to Magistrate Judge Ervin
**FAMILY DOLLAR SERVICES, LLC; and**
**FAMILY DOLLAR STORES OF ARKANSAS, LLC**     **DEFENDANTS**

## Class Action Complaint

COMES NOW Plaintiffs Randy Washington, Linda Price, Davisha Silas, David Martinez, and Sequoria Grady, each individually and on behalf of all others similarly situated, by and through their attorneys Chris Burks and Brandon Haubert of WH LAW PLLC, and for their Class Action Complaint against Defendants Family Dollar Stores, Inc.; Dollar Tree, Inc.; Family Dollar Services, LLC; and Family Dollar Stores of Arkansas, LLC (collectively "Family Dollar" or "Defendants"), she does hereby state and allege as follows:

### I.  Introduction

1.  This is a class action brought by Plaintiffs Randy Washington, Linda Price, Davisha Silas, David Martinez, and Sequoria Grady, each individually and on behalf of all other hourly-paid employees of the West Memphis Family Dollar Distribution Center who worked for Defendants

at that location during any time within a three-year period preceding the filing of this Complaint.

2. Plaintiffs bring this action for civil conspiracy and gross negligence under Arkansas law for Defendants knowingly exposing its own workers to a long-lasting and massive rodent infestation and other unsanitary conditions at its West Memphis, Arkansas distribution center, and for a declaratory judgment, monetary damages, liquidated and punitive damages, prejudgment interest, costs, including a reasonable attorney's fee as a result of Defendants' actions and inactions *infra*.

## II. Jurisdiction and Venue

3. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1332 because this suit is between citizens of different States.

4. The acts complained of herein were committed and had their principal effect against Plaintiffs within the Delta Division of the Eastern District of Arkansas; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

5. Defendants do business in this district and a substantial part of the events alleged herein occurred in this District.

6. This Court has personal jurisdiction over Defendants as they conduct business in this judicial district in Arkansas, have purposefully directed their actions at this judicial district of Arkansas and its citizens, or have the requisite minimum contacts with this judicial district of Arkansas necessary to permit this Court to exercise jurisdiction. Through the conduct described herein, Defendants are deemed to be doing business in Arkansas as they: (a) transacted or admitted to transacting business within Arkansas and (b) maintained substantial contacts in Arkansas.

Defendants operate in Arkansas, and because Defendants advertise, market, and sell products in Arkansas; accept money from purchasers located in Arkansas; engage in systematic and continuous business activities in Arkansas including employing Plaintiffs; and transact substantial business with Arkansas entities and citizens, Defendants generally have sufficient minimum contacts in this judicial district of Arkansas.

7. Defendants' numerous contacts with this judicial district of Arkansas are sufficient for them to reasonably anticipate being called into court in this judicial district of Arkansas. Defendants, separately and as a single, unified business enterprise, have contacts in Arkansas that are so continuous and systematic as to render it essentially at home in Arkansas, including but not limited to: (a) continuing since 1994, when its West Memphis Distribution Center was opened, annually importing into and exporting from the State of Arkansas millions of dollars of products through that distribution center; (b) creating and continuing to create a marketing strategy specific to Arkansas, its retail locations, and consumers; (c) maintaining retail stores, offices, and an 850,000 square foot distribution center in Arkansas; (d) employing hundreds of Arkansas citizens; (e) owning real property within Arkansas, including the West Memphis Distribution Center; and (f) maintaining banking and other financial accounts in Arkansas.

8. The actions of Defendants, separately and as a single, unified business enterprise, which are alleged herein have occurred in this judicial district of Arkansas and give rise to this suit. The underlying controversy occurred in Arkansas. The substantial acts, conduct, and omissions complained of herein occurred or accrued in Arkansas; the damages sustained, occurred, or accrued in Arkansas; and the potentially hazardous, adulterated, or contaminated products and animal byproducts were used, ingested, or handled in Arkansas. The actions alleged herein have

had the foreseeable intended effect of causing injury to persons residing in, located in, or doing business in Arkansas.

9. The witnesses to violations alleged in this Complaint reside in this District.

10. The records and other documents related to the employment practices that Plaintiffs challenges are accessible in this District.

### III. The Parties

11. Plaintiffs repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

12. Plaintiff Randy Washington is a citizen and resident of Crittenden County, Arkansas.

13. Plaintiff Davisha Silas is a citizen and resident of Crittenden County, Arkansas.

14. Plaintiff Linda Price is a citizen and resident of Crittenden County, Arkansas.

15. Plaintiff David Martinez is a citizen and resident of St. Francis County, Arkansas.

16. Plaintiff Sequoria Grady is a citizen and resident of Crittenden County, Arkansas.

17. Plaintiffs each worked for Defendants as hourly-paid distribution center associates within the three (3) years preceding the filing of this Complaint.

18. At all times material herein, Plaintiffs have been entitled to the rights, protection and benefits provided under Arkansas civil conspiracy and gross negligence laws.

19. Family Dollar Stores, Inc. ("Family Dollar Stores") is a Delaware corporation and wholly-owned subsidiary of Dollar Tree, Inc., with its headquarters and principal place of business located at 10401 Monroe Road, Matthews, North Carolina 28105. Family Dollar Stores, through its enterprise design, executives and officers, and policies and procedures, controlled its

distribution center, numerous retail locations, and subsidiaries that conduct business throughout the State of Arkansas. At all times relevant to this Complaint, Family Dollar Stores was responsible for the design, implementation, and execution of the marketing, distribution, and selling practices at its West Memphis Distribution Center and its retail locations. Family Dollar operates as a single, unified business enterprise, and Family Dollar Stores exerts day-to-day operational control from the top down by designing, implementing, monitoring, and enforcing uniform policies and procedures that govern how the West Memphis Distribution Center and its retail locations operate, including the operations which are the subject of this Complaint.

20. Dollar Tree, Inc. ("Dollar Tree") is a Virginia corporation and publicly traded company, with its headquarters and principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. Dollar Tree is the owner of Family Dollar Stores and all of its subsidiaries and affiliated entities. Dollar Tree, through Family Dollar Stores and its subsidiaries or affiliated entities, conducts business throughout the State of Arkansas. At all times relevant to this Complaint, Dollar Tree, through Family Dollar Stores, directed and controlled the marketing, distribution, and sale of products at its stores in Arkansas. Dollar Tree directed and controlled Family Dollar Stores with respect to the design, implementation, and execution of the marketing, distribution, and selling practices at its West Memphis Distribution Center and its retail locations. Family Dollar operates as a single, unified business enterprise, and Dollar Tree, through Family Dollar Stores, exerts day-to-day operational control from the top down by designing, implementing, monitoring, and enforcing uniform policies and procedures that govern the operations of its retail locations and distribution centers, including the West Memphis Distribution Center and the operations which are the subject of this Complaint

21. Family Dollar Services, LLC is a North Carolina limited liability company, with its principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. It is licensed to do business in Arkansas and can be served via its registered agent, Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201. Family Dollar Services, LLC, along with its co-defendants, is responsible for the implementation and execution of the policies and procedures promulgated and adopted by Dollar Tree and Family Dollar Stores for the operation of the West Memphis Distribution Center.

22. Defendant Family Dollar Stores of Arkansas, LLC., is a Virginia limited liability company, with its principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. It is licensed to do business in Arkansas and can be served via its registered agent, Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201. Family Dollar Stores of Arkansas, LLC, along with its co-defendants, is responsible for the implementation and execution of the policies and procedures promulgated and adopted by Dollar Tree and Family Dollar Stores for the operation of the West Memphis Distribution Center.

23. Defendants were at all times relevant hereto Plaintiffs' employer, as well as the employer of the members of the proposed class, and is and has been engaged in interstate commerce.

### IV. Factual Allegations

24. Plaintiffs repeat and re-allege all the preceding paragraphs of this Original Complaint as if fully set forth in this section.

25. Dollar Tree, Inc. is the parent company and owner of Family Dollar Stores, Inc. and

its wholly-owned subsidiaries. Dollar Tree is a Fortune 500 company and a leading operator of discount variety stores in North America, including those stores under the Family Dollar trade name. Family Dollar operates approximately 8,000 retail locations and 11 distribution centers.

26. Family Dollar is a "value store" that sells groceries, medicine, medical devices, dietary supplements, cosmetics, and many other household goods. Thousands of Arkansas consumers depend upon Family Dollar for their daily needs. It promises its customers that it is "[t]he best small-format value and convenience retailer, serving the needs of [its] shoppers in the neighborhoods [it] serves." Many stores are located in rural areas, usually in small towns, often within walking distance or a very short drive from consumers' homes.

27. Family Dollar operates the Family Dollar Distribution Center, which is located at 1800 Family Dollar Parkway in West Memphis, Arkansas (the "West Memphis Distribution Center"). The West Memphis Distribution Center distributes products to Family Dollar stores in six states, including 85 stores in Arkansas.

28. The Arkansas Department of Health ("ADH") inspected the West Memphis Distribution Center multiple times in 2021. During an on-site inspection on March 3, 2021, ADH inspectors reported seeing significant rodent activity where human food and pet food were stored. The inspectors noted that members of Family Dollar management stated that they were aware of the rodent issues. On April 2, 2021, ADH inspectors reported that effective measures were not being taken to stop the rodent infestation.

29. In early January 2022, after receiving notice of the issue from ADH in October 2021, as well as multiple consumer complaints, the U.S. Food and Drug Administration ("FDA") began an investigation of the West Memphis Distribution Center. 6. On March 18, 2022, after its

investigation, the FDA issued a Safety Alert regarding the West Memphis Distribution Center, which stated in part that:

> Conditions observed during the inspection included live rodents, dead rodents in various states of decay, rodent feces and urine, evidence of gnawing, nesting and rodent odors throughout the facility, dead birds and bird droppings, and products stored in conditions that did not protect against contamination. More than 1,100 dead rodents were recovered from the facility following a fumigation at the facility in January 2022. Additionally, a review of the company's internal records also indicated the collection of more than 2,300 rodents between Mar. 29 and Sep. 17, 2021, demonstrating a history of infestation.

30. Because of the massive rodent infestation, other unsanitary conditions, and related health hazards, the FDA advised consumers not to use and to discard numerous potentially hazardous or contaminated products that were sold at Family Dollar stores in six states, including 85 Arkansas stores, from January 1, 2021, through the date of the Safety Alert. This was necessary because rodents, including rats and mice, can pass a plethora of diseases on to humans. Those diseases include Salmonellosis, an infection caused by Salmonella bacteria, which is usually spread to humans from animal feces and is especially dangerous to infants, children, pregnant women, elderly, and immunocompromised people.

31. The potentially harmful products included: (a) human foods (dietary, herbal and mineral supplements, and vitamins); (b) animal foods; (c) cosmetics (skincare products, baby oils, lipsticks, shampoos, and baby wipes); (d) medical devices (feminine hygiene products, surgical masks, contact lens cleaning solutions, bandages, and nasal care products); and (e) over-the-counter medications (pain medications, eye drops, dental products, antacids, and other medications for both children and adults).

32. On February 11, 2022, the FDA completed its investigation and issued a 21-page

report revealing in considerable detail the sickening scenes from inside the rodent-infested West Memphis Distribution Center.

33. The Inspection Report included 12 formal Inspectional Observations regarding the West Memphis Distribution Center, as follows:

- "You did not exclude pests from your food plant to protect against contamination of food."

- "You did not maintain your plant in a clean and sanitary condition and keep your plant in repair."

- "You did not keep the grounds around your plant in a condition that would protect against the contamination of food."

- "You did not hold animal food for distribution under conditions that protect against contamination and minimize deterioration."

- "You did not take effective measures to exclude pests from your plant and protect against contamination of animal food by pests."

- "The responsibilities and procedures applicable to the quality control unit are not in writing and fully followed."

- "Buildings used in the manufacture, processing, packing, or holding of drug products are not maintained in a clean and sanitary condition and free of infestation by rodents, birds[,] insects, and other vermin."

- "Buildings used in the holding of a drug product are not maintained in a good state of repair."

- "Equipment used in the manufacture, processing, packing, or holding of drug products is not of appropriate design to facilitate operations for its cleaning and maintenance."

- "Written procedures are not established for the cleaning and maintenance of equipment, including utensils, used in the manufacture, processing, packing, or holding of a drug product."

34. The Inspection Report also stated that: [Family Dollar] was aware of an increased presence of rodents in the Distribution Center (DC) since at least January 2020. Per your General

Manager, on October 26, 2021, when a fire drill was conducted, dozens of rats could be seen running around the facility due to the loud and sustained sound of the fire alarm. At some time during October 2021, [Family Dollar] stopped using the breakroom and Inventory Control Center (ICC) room located West of Dock Door on the 16 North side of the building due to the significant foul stench/odor of rodents in the facility. [Family Dollar] lacks a system for receiving and tracking reports from your stores of potentially contaminated product received from the Distribution Center (DC). However, [Family Dollar] was able to provide some emails dated January 8, 10, 12, and 13, 2022 containing reports from various stores serviced by your Distribution Center of product that was received with rodent excreta pellets and/or that was gnawed/chewed, a report of a "live large rat" found in a box received, and a report of a large rat jumping out of a pallet received from the Distribution Center."

35. On February 18, 2022, Family Dollar issued a voluntary recall and temporarily closed 404 stores, including 85 Arkansas stores, so that recalled products could be removed from the shelves.

36. During this time, Family Dollar made significant profits, while knowingly exposing Arkansas employees to potentially hazardous or contaminated products by allowing and failing to prevent long-lasting and massive rodent infestations and other unsanitary conditions at its West Memphis Distribution Center. Likewise, many Family Dollar stores throughout the country have been forced to close due to rodent infestations in the recent past. Together, these facts demonstrate a much larger and troubling pattern of willful and intentional neglect by Family Dollar that compromise the health, safety, and well-being of Arkansas employees.

37. Plaintiffs now seek actual and punitive damages, disgorgement, restitution, civil

penalties, and injunctive relief against Family Dollar to protect the health, safety, and economic well-being of Arkansas employees of the West Memphis Distribution Center.

38. During part of the three (3) years prior to the filing of this lawsuit, Plaintiffs worked for Defendants in West Memphis, Arkansas.

39. Defendants directly hired Plaintiffs, paid them wages and extra compensation, dictated their work schedules, duties, protocols, applications, assignments and employment conditions, and kept records regarding their employment.

## V. Representative Action Allegations

### A. Civil conspiracy and gross negligence Rule 23 Class

40. Plaintiffs, each individually and on behalf of all other similarly situated who were employed by Defendants within the State of Arkansas, bring this claim for relief for violations of Arkansas civil conspiracy and gross negligence law pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41. Plaintiffs propose to represent the class of employees of the West Memphis Distribution Center who are/were employed by Defendants within the relevant time period within the State of Arkansas.

42. Common questions of law and fact relate to all members of the proposed class, such as:

> (a) whether Defendants breached specific duties to its West Memphis employees pursuant to A.C.A. § 11-5-102 to have kept the West Memphis Distribution Center "free from gas or effluvia arising from any sewer, drain, privy, or other nuisance on the premises" and whether "all poisonous or noxious gases arising from any process and all dust which is injurious to the health of persons employed which is created in the process of manufacturing within the above-named establishments" was "removed

      as far as practicable by ventilators, exhaust fans, or other adequate devices," or conspired with others to do so.

  (b) whether Defendants breached specific duties to its West Memphis employees pursuant to A.C.A. § 11-5-103 to "remove[] at least once each day and be disposed of in such manner as not to cause a nuisance" all "decomposed, fetid, or putrescent matter and all refuse, waste, and sweepings." and whether "All cleaning, sweeping, and dusting" was done "in such a manner as to avoid, as far as possible, the raising of dust and noxious odors," or conspired with others to do so.

43. Common questions of law and fact predominate over any questions affecting only the individual named Plaintiffs, and a class action is superior to other available methods for fairly and efficiently adjudicating the claims of the members of the proposed civil conspiracy and gross negligence class.

44. The class members have no interest in individually controlling the prosecution of separate actions because the injury from the breach of duty and civil conspiracy counts is common to all Plaintiffs and class members.

45. Plaintiffs are unable to state the exact number of the potential members of the civil conspiracy and gross negligence class but believes that the class exceeds 150 persons. Therefore, the class is so numerous that joinder of all members is impracticable.

46. At the time of the filing of this Complaint, neither Plaintiffs nor Plaintiffs' counsel knows of any litigation already begun by any members of the proposed class concerning the allegations in this Complaint.

47. Concentrating the litigation in this forum is highly desirable because Plaintiffs and all proposed class members work or worked in Arkansas.

48. No difficulties are likely to be encountered in the management of this class action.

49. The claims of Plaintiffs are typical of the claims of the proposed class in that

Plaintiffs worked for Defendants and experienced the same civil conspiracy and gross negligence violations that all other class members suffered.

50. Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

51. Plaintiffs' counsel is competent to litigate Rule 23 class actions and other complex litigation matters, including civil conspiracy and gross negligence cases like this one, and to the extent, if any, that they find that they are not, they are able and willing to associate additional counsel.

52. Prosecution of separate actions by individual members of the proposed class would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed class that would establish incompatible standards of conduct for Defendants.

## VI. FIRST CLAIM FOR RELIEF
### (Individual Claims)

53. Plaintiffs repeat and re-allege all the preceding paragraphs of this Original Complaint as if fully set forth in this section.

54. Based upon Defendants' knowledge and foreseeability of the effects of their actions or inactions and control over the day-to-day operational control from the top down by designing, implementing, monitoring, and enforcing uniform policies and procedures that govern how the West Memphis Distribution Center and its retail locations operate as detailed throughout the Complaint and identified further herein, Defendants owe a duty to exercise a reasonable standard of care to its workers in the West Memphis Distribution Center.

55. Likewise, based upon Defendants' knowledge and foreseeability of the effects of their actions or inactions and control over the sorting and distributing of products as detailed

throughout the Complaint and identified further herein, Defendants owe a duty to use ordinary care not to endanger the health, welfare, or safety of its workers in the West Memphis Distribution Center.

56. It is foreseeable that West Memphis Arkansas Distribution Center workers would be harmed and damaged by the failure of Defendants to perform these duties, and Defendants had actual knowledge that the failure of these duties would cause harm to Plaintiffs and Arkansas Distribution Center Workers.

57. Defendants breached their duty to Plaintiffs and Arkansas citizens by marketing, distributing, and selling potentially hazardous and defective products (which contain or have a high risk of containing Salmonella or other infectious diseases) to Arkansas citizens; by failing to take even slight care to take those steps necessary to correct the massive rodent infestation or discontinue selling potentially hazardous and contaminated products to Arkansas citizens; and by failing to warn the State and its citizens of the potentially hazardous and defective condition of the products emanating from the West Memphis Distribution Center and sold at Defendants' retail locations

58. Defendants' conduct fell below the reasonable standard of care. Their negligent acts included, but are not limited to:

    a. Not excluding rodents, birds, insects, and other vermin from their distribution center to protect against contamination;

    b. Not maintaining their distribution center in a clean and sanitary condition to protect against contamination;

    c. Not maintaining the grounds of their distribution center to protect against contamination;

    d. Not maintaining equipment in a clean and sanitary condition to protect against contamination;

    e. Not maintaining or following reasonable responsibilities applicable to quality control;

    f. Failing to inspect its facilities for safety, quality control, and health-related issues;

    g. Not maintaining written procedures applicable to quality control; and

    h. Not maintaining written procedures for the cleaning and maintenance of equipment used in the distribution of products by its employees.

59. Defendants were aware, or reasonably should have been aware, that the products they were exposing their workers to were potentially hazardous or harmful, did not perform their intended use, and were contaminated.

60. When Arkansas workers touched the products and inhaled the air at the West Memphis distribution center, they were unaware of their unsafe and dangerous nature and are without fault.

61. By engaging in grossly negligent and reckless conduct that created an unreasonable risk of harm to Arkansas employees, Defendants failed to exercise reasonable care to prevent such harm, and their Arkansas employees sustained damages.

62. As a direct and proximate cause of the foregoing, Arkansas employees of the West Memphis Distribution Center have lost wages, have physical, emotional and mental health damages, and will continue to suffer, damages and economic loss.

63. Plaintiffs are entitled to damages in an amount to be determined at trial.

## VII. SECOND CLAIM FOR RELIEF

### (Class Action Claim for Violation of the AMWA, breach of contract and unjust enrichment)

64. Plaintiffs repeat and re-allege all the preceding paragraphs of this Original Complaint as if fully set forth in this section.

65. All members of the proposed class worked at the same West Memphis Distribution Center and had the same duty owed to them that was breached by Defendants as discussed above, *infra*.

66. Plaintiffs, each individually and on behalf of the proposed class, asserts this claim for damages and declaratory relief pursuant to Arkansas civil conspiracy and gross negligence law.

67. At all relevant times, Defendants owed duties to Plaintiffs that they breached, and harmed Plaintiffs as a result of those breaches, and conspired to do so.

68. Plaintiffs propose to represent the civil conspiracy and gross negligence liability class of individuals defined as follows:

> **All workers employed by Defendants at the West Memphis, Arkansas Distribution Facility within the past three years who worked more than twenty (20) hours in any work week during that time period, and were exposed to the rodent infestation, its byproducts, and effects.**

69. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

70. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and the proposed class for monetary damages, liquidated and punitive damages for intentional conduct, costs, and a reasonable attorney's fee.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Randy Washington, Linda Price, Davisha Silas, David Martinez, and Sequoria Grady, each individually and on behalf of all others similarly situated, respectfully prays that Defendants be summoned to appear and to answer herein as follows:

A.  That Defendants be required to account to Plaintiffs, the class members, and the Court for all of the hours worked by Plaintiffs and the collective and class members and all monies paid to them;

B.  A declaratory judgment that Defendants' practices alleged herein violate Arkansas law of civil conspiracy and gross negligence;

C.  Certification of, and proper notice to, together with an opportunity to participate in the litigation, all qualifying current and former employees;

D.  Judgment for damages for civil conspiracy and gross negligence;

E.  Judgment for compensatory, non-economic, liquidated and punitive damages;

F.  An order directing Defendants to pay Plaintiffs and members of the class pre-judgment interest, reasonable attorney's fees and all costs connected with this action; and

G.  Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**RANDY WASHINGTON;
LINDA PRICE; DAVISHA SILAS;
DAVID MARTINEZ and SEQUORIA
GRADY, Individually and on Behalf of All
Others Similarly Situated, PLAINTIFFS**

WH LAW, PLLC
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891–6000

By: _____
Chris W. Burks (ABN: 2010207)
chris@whlawoffices.com